IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| MICHAEL RAY WEST | § | |
| v. | § | CIVIL ACTION NO. 5:19cv174 |
| WARDEN BALDEN POLK, ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Michael Ray West, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Balden Polk, Michelle Garland, Krystle Moss, Jonathan Huff, Darious King, Derreck Radford, and Leonard Willis, as well as three unidentified individuals.

**I. Background**

Plaintiff's second amended complaint (docket no. 21) is the operative pleading in the case. In his second amended complaint, Plaintiff asserts on November 14, 2019, at the Telford Unit, Warden Polk acted with deliberate indifference to a substantial risk of harm by an inmate on inmate assault through failure to protect. On May 21, 2020, Warden Polk again acted with deliberate indifference through failure to protect. On May 24, 2020, the Defendants Darious King, Krystle Moss, Derrick Radford, and Leonard Willis acted with deliberate indifference through failure to protect. On May 25, 2020, Leonard Willis acted with deliberate indifference through failure to protect. On May 26, 2020, the Defendants Radford, Willis, and Jonathan Huff acted with deliberate indifference through failure to protect. On July 4, 2020, Radford and an unknown defendant acted

with deliberate indifference through failure to protect. On July 14, 2020, Defendant Michelle Garland and two unknown defendants acted with deliberate indifference through failure to protect. The second amended complaint does not provide any factual specificity concerning these claims.

Plaintiff's original complaint (docket no. 1) named only Warden Polk as a defendant. This complaint asserted that in November of 2018, while at the Gib Lewis Unit in Woodville, Plaintiff received a disciplinary violation for possession of a cell phone. He was moved to more restrictive housing, where he came in contact with an inmate gang member named Longoria in February of 2019. He told Longoria that he did not have enough money to pay for "his home boy's cell phone," and so Longoria began making threats, saying if Plaintiff did not pay for the cell phone there would be a hit put out on his life. He told Longoria that he only had $200 and would need a few more months to come up with the rest, and Longoria accepted the money and agreed to more time.

In April of 2019, Plaintiff states that he got a letter from another gang member, called "Southern Side," asking about the money for the phone. He sent $200 to Southern Side through a support service inmate and asked him to notify his "home boys" that Plaintiff would need more time to come up with more money.

In June of 2019, Plaintiff states he was transferred from the Gib Lewis Unit to the Connally Unit. On July 20, 2018, an inmate named Martinez contacted him on behalf of Southern Side. He told Martinez that he did not have any more money, and Martinez said he would be back in contact with him in a few days, and that if Plaintiff did not come up with the money, he would be killed.

A few days later, Plaintiff says he was transferred to the Telford Unit. Around August 5 or 6, 2019, a gang member named Waco came to the dayroom from another section and asked Plaintiff about the money for the cell phone. Plaintiff told Waco that he did not have any money at that time but he was willing to pay and needed some more time. Waco told him that he had 30 days to send $1100 to an address in Atascosa, Texas.

Over the next few months, Plaintiff says he was moved three times, into another cell in 12 Building F Pod and then to 12 Building D Pod, and then to C Pod. On November 13, 2019, he

received a letter from Waco saying that if the money is not at the specified address in two weeks, he would be dead.

The next day, November 14, 2019, Plaintiff states he sent a life endangerment grievance to Warden Polk, but received no response. He believes this was retaliation for other complaints filed against Warden Polk.

Plaintiff requested an injunction in his original complaint, directing that he be transferred into federal custody. He stated that he was in the process of exhausting his administrative remedies because he filed a grievance on November 14 and has not yet received a reply.

In his first amended complaint, signed on September 18, 2020, Plaintiff added King, Moss, Radford, Willis, Huff, Garland, and three unknown officers to the case. He stated that on May 21, 2020, he sent an I-60 inmate request form to Warden Polk asking that a life endangerment report be filed due to threats from other inmates on May 18, 2020, regarding money for the cell phone, but Warden Polk failed to respond. On May 24, 2020, Plaintiff states videotape evidence showed an inmate named Reyes reached out of his cell with a fan motor in a sock in an attempt to assault Plaintiff. He contends the prison officials acted with deliberate indifference by failing to "take steps within the guidelines of the established policies as attached as Exhibit A, to avoid any further attempts to assault and that was the result of the Plaintiff later being assaulted by Offender Meyes [sic] on May 26, 2020, and also the result of plaintiff's constitutional rights being violated here under the Eighth Amendment to be protected from being assaulted by other inmates - defendants' names Sgt. Darious King, Sgt, Krystle Moss, Officer Derrick Radford, and Officer Leonard Willis, inmate name Michael Reyes [TDCJ number omitted]."

On May 25, 2020, Plaintiff says the videotape again shows Reyes reaching his arm out of his food slot with a weapon, but the prison officials again acted with deliberate indifference to avoid further attempts at assault. On May 26, Plaintiff states he was being escorted to the shower when he was assaulted by inmates Rogers, Turner, and Reyes. He contends he told the escorting officers that he needed medical care and asked that a life endangerment report be filed, but the officers

3

disregarded his requests and placed him back in the same cell location where those three inmates could assault him again. Lt. Huff arrived about a minute after the assault and the officers told him what had happened, and Lt. Huff spoke to Plaintiff. Plaintiff replied that he needed medical care and a life endangerment report filed, and he wanted criminal charges filed on the three inmates, but his requests were disregarded.

On July 4, 2020, Plaintiff states that the videotape shows two officers handcuffing him to be moved to another pod. The inmate in 53 Cell reached out of his cell and assaulted Plaintiff with feces. Plaintiff states he requested medical care, a life endangerment report, and criminal charges, but his requests were disregarded.

On July 14, 2020, Plaintiff states the videotape shows prison officials placing him in the day room on 12 Building E Pod 1 Section. While the officers were removing his handcuffs, the inmates in 6 Cell and 7 Cell shot feces at him through a shampoo container, and the inmate in 7 Cell tried to shoot him again as he was being escorted back to his cell. Plaintiff states he asked Sgt. Garland for medical care, a life endangerment report, and criminal charges, but she just told the officers to put Plaintiff back in his cell.

Plaintiff states he sent a Step One grievance form on May 28, 2020, and when he did not receive a response, he submitted a Step Two grievance appeal on July 14, 2020. He states that he will "continue to complete the grievance process here at the prison unit if he didn't receive an answer and will immediately notify the Court and file an amended complaint once all available administrative remedies are exhausted." (Docket no. 14-1, p. 16).

## II. The Defendants' Motion for Summary Judgment

On January 20, 2022, the Defendants filed a motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies. The Defendants assert that Plaintiff did not file any grievances concerning any of the incidents listed in his amended complaint, although he has filed numerous other grievances. Thus, the Defendants argue the lawsuit should be dismissed for failure to exhaust administrative remedies.

After receiving an extension of time, Plaintiff filed his response on April 26, 2022. In his response, Plaintiff states he filed a life endangerment grievance on November 14, 2019, with Warden Polk, and then on November 18, 2019, he mailed his lawsuit to the court. Plaintiff states he sought an injunction to prevent irreparable injury as a result of the ongoing violation of his constitutional rights. He cites Jackson v. District of Columbia, 254 F.3d 262, 267-68 (D.C.Cir. 2001) as saying that the exhaustion requirement does not apply where an injunction to prevent irreparable injury is sought.

Plaintiff says that after he did not receive a response on his November 14 grievance, he filed a Step Two appeal after the time had expired for the response. However, he states he did not receive a response to his Step Two appeal of this grievance. He also contends that he did file grievances concerning his May 24, 25, and 26, 2020, claims, as well as his July 14, 2020 claim.

### III. The Summary Judgment Evidence

A. The Defendants' Evidence

The Defendants attach a copy of Plaintiff's grievance records from November 14, 2019 through November 10, 2021. The custodian's affidavit states that there were no records of any grievances filed in May or July of 2020. None of the grievances in the record mention any of the incidents discussed by Plaintiff in his original or amended complaints, nor do any of them refer to a failure to protect. *See* docket no. 93-1, p. 3 (signed April 6, 2020, not processed because the grievable time period had expired); docket no. 93-1, p. 23, signed April 6, 2020 (not processed because the grievable time period had expired); docket no. 93-1, p. 36, signed February 4, 2020 (not processed as inappropriate, apparently because Plaintiff stated "money damages and other damages will be requested in court" as his requested relief); (docket no. 93-1, p. 38) (not clear when signed; returned unprocessed); docket no. 93-1, p. 40 (signed January 21, 2020, returned unprocessed as a submission in excess of one every seven days); docket no. 93-1, p. 50 (signed February 4, 2020, returned unprocessed as a submission in excess of one every seven days); and docket no. 93-1, p. 52 (signed January 21, 2020, returned unprocessed as a submission in excess of one every seven

days). All of the above-listed grievances complained of "prison officials" failing to control inmates from burning fires, and listed dates and locations upon which fires were allegedly set. The other grievances in the file include such complaints as retaliation and interference with mail, but none refer to a need for protection from other inmates.

B. Plaintiff's Evidence

Plaintiff attaches a number of declarations to his response to the motion for summary judgment. The first of these says that he sues Warden Polk in his individual capacity and his official capacity for injunctive relief, and sues King, Moss, Radford, Willis, Huff, and Garland in their individual capacities. The second declaration says that before he filed his lawsuit, Plaintiff filed a life endangerment grievance on November 14, 2019, and when he did not receive a response, he filed a Step Two appeal, which also did not receive a response. No life endangerment grievance dated November 14, 2019 appears in the grievance file furnished by the Defendants.

The third declaration says that Plaintiff sent Warden Polk an I-60 inmate request form on May 21, 2020, asking that a life endangerment report be filed, and he did not receive a response. The fourth declaration says that Plaintiff exhausted the issue pending in this lawsuit by filing Step One and Step Two grievance no.'s 2021082383, 2021082379, and 2021082393. No grievances bearing these numbers appear in the grievance file.

In his fifth declaration, Plaintiff states that he "mention these issues through grievance system at the unit level by describing defendants' deliberate indifference where they clearly shown disregard for plaintiff's safety on May 24, 2020 and on May 25, 2020, where these inmates had already attempted to assault the plaintiff on these dates and as a result of the prison officials' failure to protect him, the plaintiff was then assaulted by the same inmate on May 26, 2020, who had attempted to assault him days before. This information in grievance no. 2021082383, also."

In his sixth declaration, Plaintiff states that his grievance records show that he raised these issues at the unit level by describing the defendants' deliberate indifference to the assaults by other inmates with feces at the time that officers were removing his handcuffs in the dayroom, as well as

6

the defendants' failure to protect him by disregarding assaults in the dayroom and placing him back in harm's way by taking him back to his cell in the same direction when the inmate in 7 cell had assaulted him in the dayroom. He says this was "documented in grievance 2021082379, also."

In his seventh declaration, Plaintiff states that he exhausted his administrative remedies by filing Step One and Step Two grievance no.'s 2021082393, 2021082383, and 2021082379, which he says involve the same issues as when he filed his lawsuit in 2019. He also says that grievance no. 2021082383 includes the same issues involved with the attempted assaults in May of 2020 and that grievance no. 2021082379 involves the same issues involved with the attempted assault on July 14, 2020.

In his eighth declaration, Plaintiff states that he put the unit grievance staff on notice by describing the date, time, and location of the incident in his Step One grievances, no.'s 2021082393, 2021082383, and 2021082379, and referred to the evidence of the video tape so the grievance officers could review the facts and identify the responsible officers. In his ninth declaration, Plaintiff that he has "named each responsible defendant in his lawsuit as named as defendants Polk, King, Moss, Radford, Willis, Huff, and defendant Garland also."

In his tenth declaration, Plaintiff states that if an inmate submits his grievance inappropriately, policy no. BP-03-77 says that instructions on how to use the grievance process will be established separately from the OGOM [Offender Grievance Operations Manual] for distribution to offenders and employees, and offenders will be notified when grievances are submitted inappropriately. In his eleventh declaration, Plaintiff states that "after the unit grievance staff completed the Step One investigation, the grievance staff then processed the plaintiff's Step One grievance to the final grievance decision at the Step Two appeal without notifying the plaintiff in the Step One grievance response that his grievances have been submitted have been submitted inappropriate[ly], herein grievance #2021082383, 2021082379, 2021082383, also."

In his twelfth declaration, Plaintiff states he exhausted his administrative remedies on July 23, 2021, in grievance no.'s 2021082383, 2021082379, and 2021082383, and he notified the Court

on August 20, 2021. In his thirteenth declaration, Plaintiff states that he has "filed against each parties in this lawsuit as named as defendants Polk, King, Moss, Radford, Willis, Huff, and defendant Garland also."

## IV. Discussion

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. Jones, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. Woodford v. Ngo, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010). All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. Johnson, 385 F.3d at 515.

The Fifth Circuit has held that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012); accord, Ross v. Blake, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016) (district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account).

In this case, the Defendants have furnished summary judgment consisting of Plaintiff's grievance file between the dates of November 14, 2019 and November 10, 2021. None of the grievances contained in that file relate to the allegations of Plaintiff's complaint, or would put prison officials on notice of any of the complaints forming the basis of this lawsuit. This summary judgment evidence shows Plaintiff failed to exhaust his administrative remedies.

In his original complaint, Plaintiff stated that he filed his Step One grievance four days before filing suit and was awaiting a response. This assertion makes clear that he did not exhaust his administrative remedies before filing his original complaint because he did not complete the exhaustion process prior to filing suit. Gonzalez, 702 F.3d at 788.

The Supreme Court has suggested in dicta that the filing of an amended complaint could obviate the problem of grievances being decided after the original complaint was filed. Ramirez v. Collier, 142 S.Ct. 1264, 1276 (2022). The Court need not address this issue in the present case, however, because even assuming later-filed grievances can exhaust administrative remedies as to claims raised in amended complaints, the summary judgment evidence fails to show Plaintiff exhausted his administrative remedies as to any of his claims.

On July 23, 2021, Plaintiff filed a notice (docket no. 61) saying that he had advised the Court he would provide notice when he had exhausted administrative remedies, and he has received back grievances no. 2021082393 and 2021082379, but the third grievance has not been completed. On August 27, 2021, he filed a notice (docket no. 64) saying he had received his third grievance back. In the twelfth declaration attached to his response, he stated he exhausted his administrative remedies on July 23, 2021, in grievance no.'s 2021082383, 2021082379, and 2021082383; however, none of these grievances are in the record. Plaintiff also asserted that he filed a Step One grievance in May of 2020 and a Step Two appeal in July of 2020, neither of which appear in the record.

In Huff v. Neal, 555 F.App'x 289, 2014 U.S. App. LEXIS 1535, 2014 WL 274500 (5th Cir., January 27, 2014), the defendants filed a motion for summary judgment on the issue of exhaustion on administrative remedies, to which the plaintiff filed a response. The district court dismissed the

9

lawsuit, stating that the only evidence cited by the plaintiff was his own declaration containing conclusory statements that he exhausted administrative remedies, that the Bureau of Prisons did not comply with its own regulations, and that the response to his request for informal resolution was delayed. The Fifth Circuit affirmed the dismissal of the lawsuit, holding that the plaintiff's unsupported allegations that he did exhaust his remedies were insufficient to defeat the motion for summary judgment and that "conclusory allegations supported by conclusory affidavits are insufficient to require a trial," *citing* Shaffer v. Williams, 794 F.2d 1030, 1033 (5th Cir. 1986).

As in Huff, Plaintiff has submitted nothing more than conclusory declarations containing conclusory allegations of exhaustion, which are insufficient to defeat a properly supported motion for summary judgment. *See also* Kidd v. Livingston, 463 F.App'x 311, 2012 U.S. App. LEXIS 3970, 2012 WL 614372 (5th Cir., February 28, 2012) ("conclusory assertions and production of an unprocessed Step Two form in the district court failed to create a genuine dispute as to his exhaustion of this grievance,") citing Freeman v. Texas Department of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004); Ryan v. Phillips, 558 F.App'x 477, 2014 U.S. App. LEXIS 5087, 2014 WL 1017117 (5th Cir., March 18, 2014) ("conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any formal or informal grievances,") *citing* Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010). These holdings comport with the long-standing principle that a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Powers v. Northside Independent School District, 951 F.3d 298, 307 (5th Cir. 2020).[1]

---

[1] Otherwise, a prisoner could defeat the exhaustion requirement by the simple expedient of filing conclusory declarations claiming exhaustion without support in the record, or claiming that prison officials refused to process his grievances. *See generally* Wall v. Black, 2009 U.S. Dist. LEXIS 90193, 2009 WL 3215344 (S.D.Miss., September 30, 2009) (prisoner's claim that prison officials denied him grievance forms does not automatically defeat summary judgment on the issue of exhaustion; instead, the prisoner must present sufficiently specific facts and not bald, conclusory assertions).

Plaintiff also argues that he is excused from the exhaustion requirement because he sought emergency injunctive relief, citing Jackson v. District of Columbia, 254 F.3d at 267-68.  In Jackson, a group of Rastafarian and Sunni Muslim prisoners challenged a grooming policy forbidding beards and long hair.  The district court determined that the prisoners failed to exhaust their administrative remedies and also held that the challenged policy did not violate the First Amendment or the Religious Freedom Restoration Act.

On appeal, the prisoners argued in relevant part that the district court erred by refusing to recognize an irreparable injury exception to the exhaustion requirement, but the District of Columbia Circuit concluded that an irreparable injury exception is unnecessary.  The court cited Title VII cases holding that while such complainants must normally exhaust administrative remedies before seeking judicial relief, Title VII does not expressly foreclose the inherent equitable power of courts to issue injunctions to preserve the status quo, meaning that district courts can grant interim injunctive relief where plaintiffs face either irreparable injury or imminent retaliation.  Reasoning from this, the court stated that the district court had no reason to recognize an irreparable injury exception to the Prison Litigation Reform Act's exhaustion requirement because the district court had inherent power to protect the prisoners while they exhausted prison grievance procedures.  However, the court went on to note that the district court had no need to exercise that authority because by the time the Bureau of Prisons raised its exhaustion defense, the district court had issued a temporary restraining order which by agreement of the parties remained in effect until the court ruled on the merits.

Nonetheless, the circuit court went on to agree with the district court that the prisoners had in fact failed to exhaust their administrative remedies, emphasizing that "prisoners may only file actions under federal law concerning their conditions of confinement after they have exhausted their prison's administrative remedies."  Jackson, 254 F.3d at 269.  Because the prisoners did not meet this requirement, the circuit court remanded the case with instructions to dismiss without prejudice for failure to exhaust administrative remedies.

Jackson, being a case from the District of Columbia Circuit, is not binding authority on the Eastern District of Texas. *See* 28 U.S.C. §41. This Court is bound by the precedents of the Supreme Court and the Fifth Circuit, and the Fifth Circuit has held that requests for injunctive relief, even ones alleging exigent circumstances, are not exempt from the exhaustion requirement. Muhammed v. Wiles, 841 F.App'x 681, 2021 U.S. App. LEXIS 742, 2021 WL 112523 (5th Cir., January 12, 2021); *accord*, McMillian v. Director, TDCJ-CID, 540 F.App'x 358, 2013 U.S. App. LEXIS 19592, 2013 WL 5345351 (5th Cir., September 25, 2013) (claim of subjection to abusive searches, sleep deprivation, and harassment due to hourly strip searches properly dismissed for failure to exhaust despite prisoner's claim of exigent circumstances).

In any event, Jackson offers no relief to Plaintiff even if it were binding on this Court. The D.C. Circuit did not hold that the mere fact the prisoners sought injunctive relief excused the exhaustion requirement; on the contrary, the lawsuit was dismissed because the prisoners failed to exhaust their available administrative remedies. Plaintiff has likewise failed to exhaust his administrative remedies, and the Defendants' motion for summary judgment should be granted.

**IV. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Burleson v. Texas Department of Criminal Justice, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Id., *citing* Allen v. Rapides Parish School Board, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. Boudreaux v. Swift Transportation Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Prison Legal News v. Livingston, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. Adams v. Traveler's Indemnity Co., 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record that supports the challenged claims and articulate the precise manner in which that evidence supports the challenged claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A review of the pleadings and summary judgment evidence in this case shows that there are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law because the Plaintiff Michael West did not exhaust his administrative remedies. As a result, the lawsuit should be dismissed without prejudice. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019).

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (docket no. 93) be granted and the lawsuit dismissed without prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found.  An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections.  See Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error.  Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**SIGNED this 18th day of May, 2022.**

*[Signature]*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE