## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| MICHAEL RAY WEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:19-CV-00174-RWS |
| | § | |
| WARDEN BALDEN O. POLK, ET AL., | § | |
| | § | |
| Defendants. | § | |

### ORDER

Before the Court is the Report and Recommendation of the United States Magistrate Judge (Docket No. 114), which contains his findings, conclusions and recommendations for the disposition of this matter. Plaintiff Michael R. West, an inmate of the Texas Department of Criminal Justice ("TDCJ") Correctional Institutions Division, proceeding *pro se*, filed the above-titled civil action alleging violations of his constitutional rights. Docket No. 21. The case was referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636. The named Defendants later filed a Motion for Summary Judgement Limited to the Defense of Exhaustion of Administrative Remedies. Docket No. 93. After reviewing the pleadings, the Magistrate Judge issued a Report recommending Defendants' Motion for Summary Judgment (Docket No. 23) be granted and the lawsuit be dismissed without prejudice. Docket No. 114. The Plaintiff filed objections in response. Docket No. 119. The Court hereby adopts the Report and Recommendation of the Magistrate Judge (Docket No. 114) as the findings and conclusions of this Court.

### BACKGROUND

**A.  Factual Background**

Construed liberally, Plaintiff's original and amended complaints (Docket Nos. 1, 14 and 21) allege that Defendants failed to protect him from assault by other inmates. *See, e.g.*, Docket

No. 21 at 6. Plaintiff executed his original complaint on November 18, 2019. Docket No. 1 at 5. In that complaint, which named only Warden Polk as a defendant, Plaintiff stated that he was in the process of exhausting his administrative remedies because he had filed a grievance four days earlier, on November 14, 2019, and the prison officials had not yet responded to it. *Id.* at 9. Plaintiff explained that he was "filing [his] complaint and accompanying motion for preliminary injunction now to prevent irreparable injury as a result of defendants' ongoing violation of his constitutional rights." *Id.* at 14 (citing *Jackson v. District of Columbia*, 254 F.3d 262, 267-68 (D.C. Cir. 2001)). Plaintiff added that he would notify the Court and file an amended complaint once all available administrative remedies were exhausted. *Id.*

In his first amended complaint, signed on September 18, 2020, Plaintiff added six known Defendants and three unknown officers to the case. Docket No. 14 at 10–11. Plaintiff signed his second amended complaint on November 4, 2020. Docket No. 21 at 8. In that complaint, Plaintiff states that he filed a Step One grievance on May 28, 2020, and when the grievance office failed to respond, he filed a Step Two appeal on July 14, 2020, to which he again received no response. *Id.* at 17. Plaintiff reiterated that he was filing his complaint at the present moment to prevent irreparable injury as a result of ongoing violations of his constitutional rights. *Id.* (citing *Jackson*, 254 F.3d at 267–68).

On January 20, 2022, Defendants filed a motion for summary judgment based upon failure to exhaust administrative remedies. Docket No. 93. Defendants attached a copy of Plaintiff's grievance file from September 1, 2019 to July 31, 2020 as summary judgment evidence. Docket No. 93-1. Plaintiff filed his response to Defendants' motion, on April 26, 2022, again citing *Jackson* and arguing that he filed grievances to which he received no response. *See e.g.,* Docket No. 111 at 3.

Plaintiff also submitted a number of "declarations" in response to the Defendants' motion for summary judgment. Docket Nos. 111-1–111-13. In his declaration, Plaintiff asserts he exhausted his administrative remedies by filing Grievance Nos. 2021082393, 2021082383 and 2021082379. Docket No. 111-4–111-8, 111-11–111-12. These grievances were not, however, included in the summary judgment evidence, presumably because they were filed after the summary judgment motion. Plaintiff also referred to a Step One grievance dated in May of 2020 and a Step Two grievance appeal dated in July of 2020, but these grievances also do not appear in the record. *See, e.g.,* Docket No. 111 at 5–6; Docket No. 111-3.

B.    **The Magistrate Judge's Report and Recommendation**

On May 18, 2022, the Magistrate Judge issued a Report recommending that the motion for summary judgment based upon failure to exhaust administrative remedies be granted. Docket No. 114. The Magistrate Judge noted that none of the grievances contained in the summary judgment evidence concerned the incidents forming the basis of the lawsuit. *Id.* at 9. Likewise, none of Plaintiff's grievances contained in the summary judgment evidence mention any of the incidents discussed by Plaintiff in his original or amended complaints, nor do any of them refer to a failure to protect. *Id.* at 5.

The Magistrate Judge correctly noted that district courts have no discretion to excuse a prisoner's failure to exhaust administrative remedies before filing his complaint, and that pre-filing exhaustion is mandatory. *Id.* at 8 (first citing *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); and then *Ross v. Blake*, 578 U.S. 632, 637–38 (2016)). Although Plaintiff contends that he had filed other grievances, which do not appear in the record, the Magistrate Judge observed that conclusory allegations of exhaustion are insufficient to defeat a properly supported motion for summary judgment. *Id.* at 9–10 (first citing *Huff v. Neal*, 555 F.App'x 289 (2014); then *Kidd v.*

*Livingston*, 463 F.App'x 311 (5th Cir. 2012); and then *Ryan v. Phillips*, 558 F.App'x 477 (5th Cir. 2014)). Otherwise, as the Magistrate Judge noted, a prisoner could defeat the exhaustion requirement simply by filing conclusory declarations claiming exhaustion or that prison officials refused to process his grievances. *Id.* at 10 n.1 (citing *generally Wall v. Black*, 2009 U.S. Dist. LEXIS 90193, 2009 WL 3215344 (S.D. Miss. 2009)).

The Magistrate Judge also rejected Plaintiff's argument that he was excused from the exhaustion requirement because he sought emergency injunctive relief, noting first that cases from the District of Columbia Circuit are not binding upon the Eastern District of Texas. Docket No. 111 at 3–4 (citing *Jackson*, 254 F.3d at 267–68); Docket No. 114 at 11–12. As the Magistrate Judge explained, the Eastern District of Texas is bound by authority from the Supreme Court and the Fifth Circuit. Docket No. 114 at 12. And the Fifth Circuit has held that requests for injunctive relief, even one alleging exigent or emergency circumstances, are not exempt from the exhaustion requirement. *Id.* at 12 (first citing *Muhammed v. Wiles*, 841 F.App'x 681 (5th Cir. 2021); and then *McMillian v. Director, TDCJ- CID*, 540 F.App'x 358 (2013)).

The Magistrate Judge further stated that, in any event, the court in Jackson held that prisoners could only file actions under federal law concerning the conditions of confinement after they had exhausted their prison's administrative remedies. *Id.* at 11 (citing *Jackson*, 254 F.3d at 269). The Magistrate Judge also noted that the circuit court in Jackson, in fact, remanded the case to the district court with instructions to dismiss without prejudice for failure to exhaust administrative remedies. *Id.* Upon finding that the summary judgment evidence showed that Plaintiff failed to exhaust his administrative remedies prior to filing suit, the Magistrate Judge recommended that Plaintiff's lawsuit be dismissed without prejudice for failure to exhaust. *Id.* At 12–13.

### C. The Plaintiff's Objections

Plaintiff filed objections to the Magistrate Judge's Report on June 30, 2022.  Docket No. 119. In his objections, Plaintiff traces the factual history of his complaint and states that he filed for an injunction to prevent irreparable injury.  *Id.*  At 7.  Plaintiff reasserts that these circumstances allow him to file his lawsuit while his grievance is being processed.  *Id.* (citing *Jackson*, 254 F.3d at 267–68).  As noted above, Plaintiff contends that his November 2019 grievance was not answered.  *Id.* Plaintiff accordingly argues that if a grievance is not answered, administrative remedies are considered exhausted.  *Id.* At 11.  In his objections, Plaintiff reasserts that he exhausted his administrative remedies through Grievance Nos. 2021082393, 2021082383 and 2021082379, which are summarized below. *Id.* At 13.

Plaintiff's Step One Grievance No. 2021082393 was signed on March 5, 2021.  Docket No. 119-1 at 2.  Plaintiff asserts this grievance was originally filed, on November 14, 2019, and never answered.  *Id.* At 1.  In this grievance, Plaintiff complains of various incidents occurring with the Texas Syndicate (TS) gang in 2019.  *Id.*  Plaintiff asserts that the TS gang threatened his life and that other inmates are acting under their influence by carrying out attacks on him.  *Id.*  The response to this grievance states as follows:

> Your grievance alleging your life is in danger from the Texas Syndicate has been reviewed.  An Offender Protection Investigation was conducted and reviewed by Telford Unit Classification Committee on [April 20, 2021].  TOUCC found no evidence to support your allegation.  You refused to cooperate with the investigation and refused to attend the committee hearing.  TOUCC recommended a housing change. No further action is warranted.

*Id.* At 2.

In his corresponding Step Two appeal, Plaintiff reasserts that his life was endangered by other inmates and requests a transfer to federal custody.  Docket No. 119-2 at 1.  Plaintiff also requests that the evidence be held for future use because of the "ongoing substantial risk of serious inmate-on-inmate assault and security problems."  *Id.*  In this appeal, Plaintiff refers to various incidents occurring in April of 2021.  *Id.* At 1–2.  The response to this grievance appeal states as follows:

> An investigation has been conducted into your complaint. A Safe Prisons / PREA investigation has been completed and no evidence has been found to substantiate your allegations of threats of violence. Any further evidence you may have to support your

>   allegations should be brought to the attention of the major or warden.  No further action is warranted by this office.

*Id.* At 2.

Plaintiff's Step One Grievance No. 2021082383 was signed on March 5, 2021.  Docket No. 119-1 at 4.  Plaintiff asserts this grievance was originally mailed on May 28, 2020, and that he is resubmitting the grievance because he never received a response.  *Id.* At 3.  In this grievance, Plaintiff complains of incidents occurring on May 24 and May 25, 2020, and states that he was assaulted on May 26, 2020.  *Id.* At 3–4.  Plaintiff reasserts that the TS gang members "have a hit on [his] life."  *Id.* At 3.  The response to this grievance states as follows:

>   Your grievance regarding problems with the inmates on 12 Building E Pod has been reviewed.  An Offender Protection Investigation was conducted and reviewed by Telford Unit Classification Committee on [April 20, 2021].  TOUCC found no evidence to support your allegation.  You refused to cooperate with the investigation and refused to attend the committee hearing.  TOUCC recommended a housing change.  No further action is warranted.

*Id.* At 4.

In his corresponding Step Two appeal, Plaintiff alleges his assault by other inmates was recorded on video and asserts that this video should be retained for future use.  Docket No. 119-2 at 3.  Plaintiff also denies refusing to cooperate with the investigation or attend the hearing.  *Id.*  Plaintiff asserts that he is, instead, refusing to allow a staff member to further endanger his life "due to her unprofessional approach."  *Id.*  Plaintiff requests that the Step Two officials overturn the Step One decision and "reinstate the investigation and the committee hearing" because his life is in danger from other inmates at the Telford Unit.  *Id.*  Plaintiff further requests a transfer to federal custody for the same reason.  *Id.*  Plaintiff also complains of on-going security problems.  *Id.*  The response to this grievance appeal states as follows:

>   Your Step Two grievance and emergency allegations of physical harm from another inmate have been reviewed.  Be advised, policy instructs inmates to "present only one issue per grievance" and due to you referencing multiple "issues," this grievance must address the "emergent issue" of allegations of physical harm from another inmate.  Records indicate that you submitted 4 emergency grievances on [March 5, 2021,] basing each on an incident that occurred at the Gib Lewis Unit back in November of 2018[,] with 3 of those grievances listing allegations from the year 2020[,] and then your appeals address allegations of incidents with current dates for the year 2021.  This is where the instruction to "present only one issue per grievance" becomes so relevant due to the possibility of misinterpretation on the part of investigators as to which "one

> issue" you are trying to present and which "one issue" to address and respond to throughout the grievance process. An Offender Protection Investigation (OPI) was conducted to address your emergency allegations and the investigator, Captain Suh, informed that you refused to provide any information, thereby forcing a result of unsubstantiated claims through your silence and refusal to participate. It is reported that the Telford Unit Classification Committee (UCC) recommended a housing change even though you *chose not to* pursue the investigation or a resolution to your allegations. No further action is warranted in this matter.

*Id.* at 4 (emphasis in original).

Plaintiff's Step One Grievance No. 2021082379 was signed on March 5, 2021. Docket No. 119-1 at 6. Plaintiff asserts this grievance was first mailed on July 27, 2020, and that it is being resubmitted because he never received an answer. *Id.* at 5. In this grievance, Plaintiff complains of being assaulted with feces on July 14, 2020, which he alleges the video should reflect. *Id.* Plaintiff then reiterates that the TS gang members have "a hit on [his] life" and that inmates are acting under the influence of the gang by carrying out assaults on him in exchange for K-2 drugs. *Id.* The response to this grievance states as follows:

> Your grievance regarding problems with the inmates on 12 Building E Pod has been reviewed. An Offender Protection Investigation was conducted and reviewed by Telford Unit Classification Committee on [April 20, 2021]. TOUCC found no evidence to support your allegation. You refused to cooperate with the investigation and refused to attend the committee hearing. TOUCC recommended a housing change. No further action is warranted.

*Id.* at 6.

In his corresponding Step Two appeal, Plaintiff states that the Step One grievance response refers to a housing change but asserts that "no correct action" has been taken regarding such change. Docket No. 119-2 at 5. Plaintiff also asserts that on April 15, 2021, between 11:30 p.m. and 2 a.m., the investigating officer came to his cell and asked if he wanted to file a life endangerment report. *Id.* Plaintiff further asserts that before he could reply, another inmate stated: "you hear that, she said life endangerment report." *Id.* After the other inmate made this statement, Plaintiff admits he told the officer that he did not know what she was talking about. *Id.* Plaintiff thereafter denies refusing to cooperate with the investigation or talk to the UCC committee; he instead asserts that he is refusing to

let the officer's unprofessional approach further endanger his life with other inmates who consider cooperating with the officials to be another form of "snitching." *Id.*

In this grievance appeal, Plaintiff further alleges that the inmates can open the cell doors, as shown by the videotapes, and that this demonstrates his life is in danger. *Id.* at 5–6. Plaintiff again requests: (1) that he be moved to another pod until the Court can consider his request for a transfer to federal custody, (2) that the video evidence be preserved and (3) that the investigation and UCC hearing be reinstated. *Id.* at 6. The response to this grievance appeal states as follows:

> Your Step Two grievance has been investigated. Review of your records reveal you refused to cooperate with the Offender Protection Investigation. There was insufficient evidence to support your claims; however, if you feel as though your life is in danger, please submit a new Step [One grievance] so a new investigation may be completed. Your housing assignment history reveals your housing changed on [April 23, 2021]. Please notify a ranking official if you have any issues. No further action is warranted.

*Id.* at 6.

## LEGAL STANDARD

Under 42 U.S.C. § 1997e, which governs the applicability of administrative remedies:

> No action shall be brought with respect to prison conditions under section 1983 of [Title 42 of the United States Code], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, which means the prisoner must not only pursue all available avenues of relief, but he must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). This requirement means that mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

Accordingly, each step in a facility grievance procedure must be pursued to properly exhaust administrative remedies. *Johnson*, 385 F.3d at 515. As noted by the Fifth Circuit,

> The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance … is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner [must] file a Step 2 grievance, which is handled at the state level. This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted.

*Id.* (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.2001)). Thus, for TDCJ prisoners to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two. Under Fifth Circuit precedent, new issues cannot be raised for the first time in a Step Two grievance appeal, and only one issue may be presented per grievance. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008).[1]

The Fifth Circuit has held that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *accord*, *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (district courts may not excuse a failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account).

The exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516 (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* at 517.

## DISCUSSION

Plaintiff's objections reference and attach the following Grievance Nos.: 2021082379, 2021082383 and 2021082393. *See e.g.*, Docket No. 119 at 8–11; Docket No. 119-1. Upon

---

[1] *See also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one issue per grievance) (available at https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf).

reviewing these grievances and their corresponding grievance appeals, Plaintiff failed to properly exhaust the available administrative remedies before filing the present lawsuit. First, the grievances, to which Plaintiff points in his objections, did not give the prison officials a fair opportunity to address the problem forming the basis of his lawsuit. Second, the grievances refer to multiple incidents over a period of years, which violates the rule that only one issue should be presented per grievance.

For example, the response to Plaintiff's Step Two appeal concerning Grievance No. 2021082383 states that Plaintiff raised multiple issues in his grievance. Docket No. 119-2 at 4. As a result, the officials only addressed the claim regarding an alleged immediate threat to Plaintiff's safety in March of 2021. *Id.* Plaintiff's two other grievances also raise multiple issues by referring to prior incidents as well as current threats. *See generally* Docket Nos. 119-1, 119-2. The officials again only addressed the current threats. *Id.* Because these grievances did not give the prison officials a fair opportunity to address the problems forming the basis of the present lawsuit, the grievances did not exhaust Plaintiff's administrative remedies.

Moreover, although Plaintiff maintains that he could file his lawsuit while his grievances were being processed because he sought emergency injunctive relief, the Magistrate Judge correctly concluded that the Fifth Circuit has rejected this argument. Docket No. 114 at 12. As the Magistrate Judge noted, the Fifth Circuit has held that requests for injunctive relief, even ones alleging exigent circumstances, are not exempt from the exhaustion requirement. *Id.* (first citing *Muhammed*, 841 F.App'x at 681; and then *McMillian*, 540 F.App'x at 358).

## CONCLUSION

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Petitioner objected. *See* 28 U.S.C. § 636(b)(1) (explaining that the district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such review, the Court has determined that the Report of the Magistrate Judge is correct, and Plaintiff's objections are without merit. It is accordingly

**ORDERED** that Plaintiff's objections (Docket No. 119) are **OVERRULED** and the Report of the Magistrate Judge (Docket No. 114) is **ADOPTED** as the opinion of the District Court.  It is further

**ORDERED** that the above-captioned civil action is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.  It is further

**ORDERED** that any and all motions currently pending in this civil action are hereby **DENIED-AS-MOOT**.

**So ORDERED and SIGNED this 27th day of September, 2022.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE